# TOWN OF MT. CRAWFORD

## V.

# VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

January 11, 1980.

Record No. 791020.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

Lawrence H. Hoover, Jr., Town Attorney (William S. Jordan, III; Karin P. Sheldon; Sheldon, Harmon, Roisman & Weiss, on brief), for appellant.

Donald G. Owens; Guy T. Tripp, III (Richard D. Rogers, Jr.; Hunton & Williams, on briefs), for appellees.

PER CURIAM.

The Town of Mt. Crawford appeals of right a State Corporation Commission decision approving a Virginia Electric and Power Company 230 kilovolt transmission line route, a portion of which passes near or through the Town. The controlling question on appeal is whether the Commission's decision is supported by the evidence. We think it is and affirm.

Mt. Crawford, having a population of about 300, is in Rockingham County and is situated on U.S. Route 11 about ten miles south of Harrisonburg. As early as 1971, Vepco began planning the location and route of an electric transmission line to run from a point west of Staunton approximately 22 miles northwardly to Harrisonburg. In the vicinity of the Town, Vepco's proposed line follows a north-south corridor of land lying between Route 11 and Interstate Route 81, both north-south highways. The line passes just to the east of the population center of the Town and approximately 2000 feet west of Interstate 81. In October of 1971, the Rockingham County Planning Commission reviewed the planned construction of the line and expressed no objections to the proposed route.

In July of 1976, Vepco filed an application with the Commission under Code § 56-46.1* for approval of the construction along the

* § 56-46.1. Commission to consider environmental factors in approving construction of electrical utility facilities; approval required for construction of certain electrical transmission lines; notice and hearings.—Whenever under any provision of law whatsoever, applicable to the Commission, the Commission is required to approve the construction of any electrical utility facility, it shall give consideration to the effect of that facility on the environment and establish such conditions as may be desirable or necessary to minimize adverse environmental impact. In such proceedings it shall receive and give consideration to all reports that relate to the proposed facility by State agencies concerned with environmental protection; and, if requested by any

intended route, and for a certificate of convenience and necessity under the Utility Facilities Act, Code § 56-265.1 to -265.9. The required statutory notice was given by newspaper publication and by service on the Chairman of the County Board of Supervisors as well as the Commonwealth's Attorney of Rockingham County. Written notice was not served on the governing body of the Town because it did not appear that the proposed line would run through the municipality. See § 56-46.1. The corporate boundaries of the Town had never been fixed, although its existence dates to the late 18th Century and it was incorporated in 1895. In 1976, available information, mainly from tax maps, indicated that the proposed line would run outside of the Town.

Rockingham County did not object to the application. The only request for a hearing, filed by a county resident, was withdrawn. Consequently, no hearing was held and by order entered in February of 1977, the Commission granted Vepco a certificate of public convenience and necessity and authorized construction of the transmission line. No appeal was noted to that order.

The Town had no comprehensive land use plan at that time. Shortly after Vepco's route was approved, the Rockingham County Planning

county or municipality in which the facility is proposed to be built, to local comprehensive plans that have been adopted pursuant to article 4 (§ 15.1-446.1 et seq.) of chapter 11 of Title 15.1 of the Code of Virginia.

No electrical transmission line of two hundred kilovolts or more shall be constructed unless the State Corporation Commission shall, after at least thirty days' advance notice by publication in a newspaper or newspapers of general circulation in the counties and municipalities through which the line is proposed to be built, and written notice to the governing body of each such county and municipality, approve such line. As a condition to such approval the Commission shall determine that the corridor or route the line is to follow will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned. If, prior to such approval, any interested party shall request a public hearing the Commission shall, as soon as reasonably practicable after such request, hold such hearing or hearings at such place as may be designated by the Commission. This section shall apply to such transmission lines for which rights-of-way acquisitions have not been completed as of April eight, nineteen hundred seventy-two. In any such hearing the public service company shall provide adequate evidence that existing rights-of-way cannot adequately serve the needs of said company. For purposes of this section, "interested parties" shall include the governing bodies of any counties or municipalities through which the line is proposed to be built, and persons residing or owning property in each such county or municipality and "environmental" shall be deemed to include in meaning "historic."

Approval of a transmission line pursuant to this section shall be deemed to satisfy the requirements of § 15.1-456 and local zoning ordinances with respect to such transmission line.

Commission began to formulate a county-wide plan for development. The plan, drawn in April of 1977, encouraged urban development in nine areas of the county, one being in the area northeast of Mt. Crawford. The plan was presented to a citizens advisory committee of the Town—the Town had no planning commission—shortly after it was formulated. At this time, county planners and Town officials, according to the Town's evidence, "first received information" that the Vepco transmission line, to be carried on towers exceeding 60 feet in height, would pass through the Mt. Crawford area proposed for residential growth.

About a year later, in April of 1978, the Town contacted the Commission to register objection to the location of the line. Among its complaints, the Town contended that a portion of Vepco's line easement was within the Town's corporate limits and thus it should have received written notice of the original proceeding under Code § 56-46.1. Vepco asserted that its survey showed the right-of-way was not within the Town and no formal notice to the municipality was required. Vepco also contended that if notice had been required, the Town should be charged with having received notice. Notice of the proposed line location had appeared in newspapers in the area, including one published in Harrisonburg. After a series of meetings failed to resolve the dispute, the Town in October of 1978 filed the instant application asking the Commission to hold a hearing. The Commission ordered that a hearing be held so that Mt. Crawford could present its objections to the proposed Vepco route and could present evidence in support of an alternative route for the line. The Commission specifically declined to rule on the question whether the Vepco corridor was within the Town's boundaries, noting "that the town has now moved to establish its boundaries," and "that the town and the County have sought the approval of the local court."

The hearing was held in January of 1979 at which the Town presented four witnesses and Vepco one. For the Town, the Mayor testified about the Town's history, described its plans for future development and stated that Vepco's line location would be inconsistent with the Town's effort to grow in an easterly direction. The County Planning Director testified in detail about the County's plans for the Town, demonstrated the purported impact of Vepco's proposed route on such plans, and described an alternate route which the line should follow to avoid passing in the vicinity of the Town.

The substitute route would move the line, as it approached Mt. Crawford from the south, in a generally easterly direction away from the Town until it reached the western edge of Interstate 81. The line

would then parallel the interstate highway for approximately 4500 feet, move northwesterly over an Interstate 81 interchange and resume its original route at a point north of the Town.

A University of Virginia professor of Urban Environmental Planning testified that "the importance of the smaller town" had been routinely neglected by land use planners. He discussed various factors which the Commission should consider in deciding whether the original route or the alternate route should be chosen. He was of opinion that the line should be located along the interstate road where motorists would observe it for only a short time rather than placing it near the Town to be seen continuously by the residents.

Finally, a licensed surveyor testified for the Town and presented a copy of his survey of the Town's boundaries.

Testifying for Vepco was its Manager of Transmission and Distribution Engineering, a registered engineer. He described the reasons why the line route in the Mt. Crawford area was selected. He testified that as the line passed to the east of the Town, it would be situated on the edge of a flood plain through "an area that has little potential for residential development." The County Planner previously testified the route could not be located west of the Town because of the proximity of the Bridgewater Airpark.

The Vepco witness testified the line was planned to conform with certain Guidelines adopted by the Commission to be used in locating transmission lines. Guideline No. 29 provides, in part:

Long view of transmission lines parallel to highways should be avoided where possible.

The witness noted the deviation suggested by the Town would be parallel and adjacent to Interstate 81 and stated it would be in direct conflict with that Guideline. He also testified the alternate route would increase the cost of constructing the entire line by approximately $383,600 and would require the use of about six additional acres of land. The witness further testified the entire line was to be completed by May 30, 1979, and that if Vepco was required to relocate the segment near Mt. Crawford, a substantial delay in that completion date would result, in part, from new efforts to acquire easements over different land. He stated that a delay of one or two years would jeopardize the reliability of electric service in the Harrisonburg area and in the Shenandoah Valley area north of Harrisonburg.

After the hearing, the Commission entered the March 1979 order now appealed from, which was followed by a July 1979 written

opinion. The Town's request for relief was denied. The Commission also decided Vepco "acted reasonably on available information" in concluding at the time the original application was filed that the transmission corridor was outside the Town limits.

In its written opinion, the Commission relied on the following factors in ruling against the Town and in affirming the original route for the line: the line could not properly be placed west of the Town; the proposed deviation would substantially increase the cost of the entire line; the placement of a transmission line parallel to an interstate highway is contrary to environmental standards; the evidence failed to support a finding that other environmental considerations would require Vepco to move the site of the proposed construction to parallel Interstate 81; and the selection of the route by Vepco avoided existing houses and business establishments in the Mt. Crawford area. The Commission concluded that "from the evidence it appears that the line is reasonably located."

The Commission also observed that, insofar as the proposed deviation was concerned, the Town's interests must be balanced against the interests of the travelling public in maintaining the view from public highways "free of obstruction to the extent reasonably possible." Noting that "Virginia's economy depends to a considerable degree on tourist trade," the Commission decided that the construction of a major transmission line along 4500 feet of an interstate highway passing through a scenic portion of the state was "unacceptable."

On appeal, the Town emphasizes that there was no evidence in the record to support the Commission's rejection of the alternative route proposed by the Town, that the Commission's decision approving Vepco's route for the line is contrary to the evidence in the record, and that the Commission erred in failing to balance the competing interests in the case. We reject each of these contentions.

We think the Commission's finding that the location of the transmission line satisfies the requirements of Code § 56-46.1 and the Commission's rejection of the Town's alternate route are both fully supported by the evidence. The Commission, in view of the notice dispute, afforded the Town a full and complete hearing. The evidence was carefully weighed and the decision explained in a detailed written opinion. Disputed questions of fact and divergent opinions have been resolved in the forum peculiarly suited for the decision of such issues and by the body authorized by the Constitution of Virginia and the applicable statutes to make a judgment on such questions. We find no error in any of the actions of the Commission in this case.

Consequently, the orders appealed from will be

*Affirmed.*